**In re Matter of Louis ZIEGLER, a Grand Jury Witness.**

**No. MISC. CR–82–84T.**

United States District Court, W.D. New York.

Nov. 2, 1982.

---

Salvatore R. Martoche, U.S. Atty., Buffalo, N.Y., Robert L. King, and Kenneth R. Fisher, Sp. Asst. U.S. Attys., Rochester, N.Y., of counsel, for petitioner.

Nixon, Hargrave, Devans & Doyle, Rochester, N.Y., Robert C. Bernius and John B. McCrory, Rochester, N.Y., of counsel, for respondent.

## DECISION

TELESCA, District Judge.

On September 27, 1978, an altercation occurred in the Monroe County Hall of Justice, Rochester, New York, outside of one of its courtrooms. The incident allegedly involved, as later reported in the Rochester Times-Union, two organized crime figures, Thomas Marotta and Angelo Vaccaro. Lou Ziegler, then a reporter for the *Times-Union,* was standing in the immediate area of this assault, observed it, and later reported on it.

The United States Department of Justice Strike Force has subpoenaed Mr. Ziegler to testify about this incident in front of the Federal Grand Jury, requesting his testimony on October 28, 1982. Mr. Ziegler refused to appear, however, and in the morning of October 28th, Mr. John McCrory—Ziegler's attorney—along with the attorneys for the Government met with this Court in Chambers in an attempt to resolve this dispute short of a contempt proceeding. This procedure obviously failed as the Government later that day moved this Court to hold Ziegler in civil contempt pursuant to Fed.R. Crim.P. 17(g). The Government's motion was returnable at 4:30 p.m. that same day. This Court, mindful of the due process requirements established by the 2nd Circuit in *In Re Sadin,* 509 F.2d 1252 (2nd Cir.1975), gave the parties until Noon on November 1st to submit briefs and scheduled this hearing for November 2, 1982. Thus, the parties have had ample time to prepare for this hearing and the Court adequate time to fully examine the legal questions presented.

The issue is quite simple: The Government wishes to have Mr. Ziegler testify in front of the Grand Jury as to what he saw, heard, felt, and in general experienced *personally* outside of that courtroom on September 27, 1978. In essence, the Government wants of Mr. Ziegler what they would demand of any eye witness to a crime: A recital of what he observed. Ziegler on the other hand, asserts that because of his status as a reporter, the information sought by the Government is privileged; that it is protected by the First Amendment and hence he cannot be compelled to testify in front of the Grand Jury concerning the event he observed.

Ziegler advances a number of arguments in support of his position, including the following: He urges that the very nature of their jobs as reporters involve them with newsworthy events and unrestricted exposure to subpoenas would result in reporters spending more time testifying in courts than seeking out and reporting the news; that the very act of giving testimony is "inherently unpleasant" and that if reporters are forced to, they will cease to aggres-

sively pursue the news. Further, that by compelling reporters to testify, sources of news will "dry up" and future sources will be reluctant to disclose newsworthy information.

This Court rejects all of the arguments in view of the facts presented here. Ziegler was an eyewitness, a status he was no doubt delighted having at the time of this incident. He happened to be in the situation that can only be envied by most other newsmen. It is the dream of every news reporter and every policeman to chance upon an incident as it occurs and to actually witness the event so that an eyewitness report may be made. While it may be "inherently unpleasant" to testify to the same incident before a Grand Jury, it is one of the highest duties of citizenship imposed upon all of us by the Constitution. That Constitution does not immunize him from testifying merely because he makes the observation as a news reporter. The ordinary citizen would not be excused from testifying as to what he observed and the First Amendment cannot be given an interpretation which would grant him immunity from testifying simply because he made these observations while on duty as a reporter. Indeed, the Supreme Court of the United States addressed this issue in the seminal case of *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), stating that:

> "Insofar as any reporter in these cases undertook not to reveal or testify about the crime he witnessed, his claim of privilege under the First Amendment presents no substantial question. The crimes of news sources are no less reprehensible and threatening to the public interest when witnessed by a reporter than when they are not."

*Id.* at 692, 92 S.Ct. at 2662.

While there has been some confusion regarding certain aspects of this decision, one thing is abundantly clear:

> "All that the *Branzburg v. Hayes,* case decided in a significant way is that reporters who witness a crime must testify as to what they saw."

Goodale, *Ninth Annual Communications Law Institute,* Vol. 2 (P.L.I.1981), at p. 338. *See also, Branzburg v. Hayes and the Developing Qualified Privilege for Newsmen,* 26 Hast.L.J. 709 (1975) ("It can be said that, as a rule, when it comes to witnessing a crime, the courts have required testimony of newsmen without contemplating at great length the relevance Justice Powell would require, or the notion that the newsman should be a last resort of testimony." *Id.* at 742). Indeed, the cases following *Branzburg,* have consistently held that if a reporter witnesses a crime, they can be compelled to testify. *See Bursey v. U.S.,* 466 F.2d 1059 (9th Cir.1972) *rehearing denied,* 466 F.2d 1092 (2nd Cir.1972); *Lightman v. State,* 15 Md.App. 713, 294 A.2d 149 (Ct. Spec.App.1972), *aff'd* 266 Md. 550, 295 A.2d 212, *cert. denied* 411 U.S. 951, 93 S.Ct. 1922, 36 L.Ed.2d 414 (1973) (required testimony of reporter who saw drugs being sold); *People v. Dan,* 41 A.D.2d 687, 342 N.Y.S.2d 731 (4th Dept.1973), *appeal dismissed* 34 N.Y.2d 764, 358 N.Y.S.2d 137, 314 N.E.2d 877 (required newsmen to testify about "events they observed personally including the identity of the person whom they observed.")

In a sense, this case is a logical extension of the *Branzburg* case. In *Branzburg,* the reporter's eyewitness account of an incident was relevant to the Grand Jury's investigation of that particular incident. In the instant case, Mr. Ziegler's testimony is not needed by a Grand Jury investigating the *assault* Mr. Ziegler witnessed. Rather, his testimony is relevant to an investigation of which the incident Ziegler witnessed is but one small part. Nonetheless, the legal principle *Branzburg* stands for is no less applicable to the instant case, that a reporter, the same as any other citizen, must testify before the Grand Jury as to what he has personally observed.

Ziegler also brings to the Court's attention 20 C.F.R. § 50.10. This regulation sets forth the Department of Justice's policy in regard to the issuance of a subpoena to a news media employee, as well as the actual procedure that must be followed by the Government attorney. This procedure was

followed here and the authorization of the Attorney General was appropriately obtained prior to the issuance of the subpoena.

This Court having carefully considered the relevant law and the arguments of counsel, decides that Mr. Ziegler must testify, and is ordered to do so, at 9:30 a.m. on November 3, 1982.