536 So.2d 1067 (1988)
CBS, INC. and Victoria M. Corderi, Petitioners,
v.
Honorable Wayne L. COBB, Circuit Judge, Sixth Judicial Circuit; Robert Joe Long and State of Florida, Respondents.
No. 88-3034.
District Court of Appeal of Florida, Second District.
November 7, 1988.
*1068 Donald M. Middlebrooks, Thomas R. Julin and Norman Davis of Steel, Hector & Davis, Miami, for petitioners.
James Marion Moorman, Public Defender, Allyn Giambalvo and Brad Permar, Asst. Public Defenders, Bartow, for respondent Robert Joe Long.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Peggy A. Quince, Asst. Atty. Gen., Tampa, James T. Russell, State Atty., and C. Marie King, Asst. State Atty., Clearwater, for respondent State.
PER CURIAM.
CBS, Inc. and reporter Victoria Corderi seek an emergency writ of certiorari to quash an order of the circuit court requiring them to relinquish unpublished film footage to the defendant in a pending criminal case. We deny the petition.
This controversy arose during the trial of Bobby Joe Long, charged with first degree murder. Long has been convicted of this same murder once before, but the supreme court reversed that conviction and ordered *1069 a new trial. Long v. State, 517 So.2d 664 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 1754, 100 L.Ed.2d 216 (1988). In the interim between Long's first conviction and the present trial, Corderi interviewed Long on Florida's "Death Row" as part of a feature story on serial killers. The broadcast included certain admissions by Long to the effect "I've probably destroyed about a hundred people." The state has obtained this broadcast footage and, over Long's objection, has been permitted to introduce it during its case-in-chief. When he became aware of the state's plan to use the footage, Long served subpoenas upon the petitioners, directing them to produce the videotape of the entire Long interview. The circuit court denied petitioners' motion to quash the subpoenas, resulting in the matter now before us.
The CBS petition is, of course, grounded in the First Amendment privilege that exists to protect journalists against unwarranted disclosure of their sources of information. See, e.g., Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); Tribune Co. v. Huffstetler, 489 So.2d 722 (Fla. 1986); Morgan v. State, 337 So.2d 951 (Fla. 1976). This privilege may be described as "limited" or "qualified" because it is not absolute and may be overcome under circumstances where the fair administration of justice establishes a compelling need for disclosure. Gadsden County Times, Inc. v. Horne, 426 So.2d 1234 (Fla. 1st DCA), petition for review denied, 441 So.2d 631 (Fla. 1983). On the other hand, where such a compelling need has not been established, this court has refused to distinguish between information received in confidence, such as through an "informer," and that which was not. Tribune Co. v. Green, 440 So.2d 484 (Fla. 2d DCA 1983), petition for review denied, 447 So.2d 886 (Fla. 1984).[1]Contra, Miami Herald Publishing Co. v. Morejon, 529 So.2d 1204 (Fla. 3d DCA 1988).
Initially, there is some question whether the materials requested by Long are the sort to which a strong presumption of privilege should attach. At the hearing on the CBS motion to quash Long's counsel raised the interesting point, "[W]hat chilling effect is there if a person talks to a reporter and asks for a copy of what he told them?" Furthermore, we cannot help but note that CBS, by soliciting the damaging comments of a condemned killer (even one apparently willing to make such admissions to a nationwide audience), may have contributed to the controversy. Cf. Waterman Broadcasting of Florida, Inc. v. Reese, 523 So.2d 1161 (Fla. 2d DCA 1988) (murder suspect's admissions to television interviewer were "unique," thus their relevancy was "obvious," supporting requirement of disclosure). Yet this court has extended protection beyond the revelation of sources and reporter's notes to non-testimonial items, finding that "unpublished photographs taken by a newspaper photographer stand on the same footing as any other information acquired by a news-gatherer." Johnson v. Bentley, 457 So.2d 507, 509 (Fla. 2d DCA 1984). "The autonomy of the press would be jeopardized if resort to its resource materials, by litigants seeking to utilize the newsgathering efforts of journalists for their private purposes, were routinely permitted." O'Neill v. Oakgrove Construction, Inc., 71 N.Y.2d 521, 526, 528 N.Y.S.2d 1, 2, 523 N.E.2d 277, 279 (1988). That is, the scope of the First Amendment's protection may be broader than is necessary only to protect confidential informants, extending to the expense and harassment that might be foreseeable if litigants were allowed unlimited access to *1070 journalistic archives.[2]
Assuming that some privilege attaches to the CBS outtakes, the question follows whether the trial court, in requiring their disclosure to Long, satisfied the three-pronged test adopted by Gadsden County Times v. Horne and Tribune Co. v. Green, supra. Briefly, the criteria for determining the necessity of disclosure are: (1) whether the information sought is relevant to issues in the case; (2) whether any alternative source exists for the information; (3) whether there is a compelling interest in the information. Only if all three questions can be answered in the affirmative may a journalist be required to relinquish or disclose privileged matters.
In determining that CBS should furnish the tapes, the trial court expressed its opinion that the cases relied upon by CBS "all regard sources, not just a finished product." Therefore, the network reasons, the trial court totally failed to apply the so-called Garland test,[3] let alone make the specific findings of fact that CBS believes are required. We disagree. Notwithstanding certain language in Gadsden County Times v. Horne regarding an absence of facts "set out in the lower court's order," 426 So.2d at 1242, we do not accept the argument that the failure of the court to make detailed findings of fact, or to reduce such findings to writing, is necessarily fatal to the party seeking to compel disclosure. As stated by counsel for Long, it is clear from the record before us "regardless whether the lower court specifically articulated findings [that] the three-part test has been met."
As to the first prong of the test, CBS argues that none of Long's statements, whether contained within the broadcast portion of the interview or not, should be admissible at trial, and therefore the outtakes sought by Long are not relevant. More specifically, they contend that Long's damaging admissions were not shown to relate to the murder for which he is now being tried, nor do they display sufficient similarity to the facts of that murder to justify their admission as "Williams Rule" evidence. Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). Furthermore, the only conceivable use Long would have for the outtakes would be if they contained "self-serving exculpatory statements," inadmissible under the hearsay rule. Moore v. State, 530 So.2d 61 (Fla. 1st DCA 1988).
Be that as it may, the trial court has determined, since the time CBS filed its petition with this court, that the state will be allowed to introduce the interview excerpt in its possession. It is not within our present authority to rule upon the correctness of this decision, except to state that it strongly bolsters Long's claim of relevancy. Whenever part of a written or recorded statement is introduced by a party, an adverse party may require the introduction of any other part of the statement that in fairness ought to be considered contemporaneously. § 90.108, Fla. Stat. (1987). Concededly, Long is at somewhat of a disadvantage in that he cannot determine whether such "fairness" arises in this case  or even whether there is anything on the tape he may want the jury to hear  without first viewing the entire statement. Yet we must take care not to confuse relevancy with the ultimate question of the admissibility of that evidence. The record in this case strongly suggests that if any segment of the interview is relevant, there is a good chance the rest of it is relevant also. Whether, beyond that, it is "pertinent and proper to be considered in reaching a decision"[4] *1071 is for the trial court still to decide.
We further find that Long has adequately demonstrated the lack of an alternative source for the same information. CBS considers this alternative source obvious  Long himself. At the hearing in circuit court Long's counsel countered that Long does not remember everything he said to reporter Corderi during the course of the interview. CBS considers this "naked assertion" insufficient. However, the trial court indicated that "I don't know how we can expect him to remember how the questions and his answers were organized," and we are not persuaded that this conclusion was unreasonable. In Colonial Penn Insurance Co. v. Blair, 380 So.2d 1305, 1306 (Fla.5th DCA 1980), the court overruled an objection based on attorney work product and required production of the transcript of a civil defendant's traffic court testimony that had been prepared at the behest of the plaintiff, noting that "[t]he memories of the parties [are] a poor and possibly fallible substitute for statements close in time to the accident." That rationale has since been extended to "unique" pictures of allegedly hazardous road conditions, relevant to the issues in a civil action, which were taken by a newspaper photographer. Carroll Contracting, Inc. v. Edwards, 528 So.2d 951 (Fla. 5th DCA 1988). The taped interview is the best evidence of what was said by Long, including the context of Long's remarks.
Finally, we hold that Long has demonstrated a compelling need for the information currently in the possession of CBS, notwithstanding his apparent inability to summarize the exact nature of that information without first being allowed to examine it. This is not merely a "fishing expedition" for evidence which theoretically could be useful to Long in the preparation of his defense. Rather, it is "a necessary step in [defendant's] due and proper preparation for trial." Gulliver's Periodicals, Ltd. v. Chas. Levy Circulating Co., 455 F. Supp. 1197 (N.D.Ill. 1978). A small portion of the interview already has been utilized to Long's detriment, and he considers it imperative to determine whether this segment was edited, properly or otherwise, in a manner which rendered it unduly suggestive or distorted its content. We must not lose sight of the fact that Long is, literally, fighting for his life. Certainly, the acquisition of helpful evidence in such a situation is more compelling than in the civil context, where the potential loss to a litigant is purely economic. The Sixth Amendment to the United States Constitution, as well as Article 1, Section 16, of the Florida Constitution, provides that the accused in a criminal proceeding shall have the right of compulsory process for obtaining witnesses in his favor. When these constitutional provisions conflict with "shield laws" designed to protect the integrity of the print or broadcast media, some deference must be afforded to the rights of the accused. So held the Supreme Court of New Jersey, describing this "rather elementary but entirely sound proposition" as "unassailable." In the Matter of Farber, 78 N.J. 259, 394 A.2d 330, 336, cert. denied sub nom. New York Times Co. v. New Jersey, 439 U.S. 997, 99 S.Ct. 598, 58 L.Ed.2d 670 (1978). We are satisfied that, under the facts of this case as presented to us, the trial court's order constitutes a reasonable determination that Long's constitutional right to defend himself outweighs the constitutional right of CBS to withhold journalistic work product.
In closing, we would observe that, given the time constraints generated by the petition's emergency status, the excellent presentation of the issues by all the attorneys who have submitted pleadings in this proceeding is worthy of commendation.
Petition denied.
CAMPBELL, C.J., and HALL and THREADGILL, JJ., concur.
NOTES
[1] The question may remain whether confidentiality (or the lack thereof), though not a prerequisite to establishing a right to protection, is a factor which may be considered by a trial court in determining whether information in the possession of the press is subject to disclosure. See, e.g., Grand Forks Herald v. District Court, 322 N.W.2d 850 (N.D. 1982), which this court relied upon for the proposition that photographs could enjoy the constitutional privilege. Johnson v. Bentley, 457 So.2d 507, 509 (Fla. 2d DCA 1984). See also, Bruno & Stillman, Inc. v. Globe Newspaper Co., 633 F.2d 583 (1st Cir.1980); United States v. Cuthbertson, 630 F.2d 139 (3d Cir.1980), cert. denied sub nom. Cuthbertson v. CBS, Inc., 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981).
[2] The Fifth District Court of Appeal, in Carroll Contracting, Inc. v. Edwards, 528 So.2d 951 (5th DCA 1988), appears to question our holding in Johnson regarding the extension of the privilege to photographs, but this factually similar case was decided on other grounds. Again, the question may remain open whether the nature of the material for which production is sought is a fact that can be considered, not in determining whether the privilege applies at all, but whether the privilege has been overcome.
[3] From Garland v. Torre, 259 F.2d 545 (2d Cir.), cert. denied, 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231 (1958), apparently the first case to set forth this three-part analysis; so described in Gadsden County Times v. Horne, 426 So.2d at 1241.
[4] Black's Law Dictionary 44 (5th Ed. 1979).