561 So.2d 577 (1990)
The MIAMI HERALD PUBLISHING CO., Etc., et al., Petitioners,
v.
Aristides MOREJON, Respondent.
No. 73195.
Supreme Court of Florida.
May 17, 1990.
Sanford L. Bohrer and Jerold I. Budney of Thomson, Muraro, Bohrer & Razook, P.A., Samuel A. Terilli, Jr., Gen. Counsel, and Richard J. Ovelmen of Baker & McKenzie, Miami, for petitioners.
Bennett H. Brummer, Public Defender, and Bruce A. Rosenthal, Asst. Public Defender, Eleventh Judicial Circuit, Miami, for respondent.
Gregg D. Thomas, Steven L. Brannock and Carol Jean LoCicero of Holland & Knight, Tampa, for amicus curiae Tribune Co.
Dan Paul and Frank Burt of Tew, Jorden, Schulte & Beasley, Miami, and George Freeman, New York Times Co., New York City, for amici curiae New York Times Regional Newspaper Group Florida Newspapers.
McDONALD, Justice.
We review Miami Herald Publishing Co. v. Morejon, 529 So.2d 1204 (Fla. 3d DCA 1988), in which the district court certified the following question as one of great public importance:
[W]hether a news journalist has a qualified privilege under the First Amendment *578 to the United States Constitution, as interpreted by the Florida Supreme Court in Morgan v. State, 337 So.2d 951 (Fla. 1976) and Tribune Co. v. Huffstetler, 489 So.2d 722 (Fla. 1986), to refuse to divulge information learned as a result of being an eyewitness to a relevant event in a criminal case  i.e., the police arrest and search of the defendant  when the journalist witnesses such an event in connection with a newsgathering mission.
Id. at 1205. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the certified question in the negative and approve the district court's decision.
A Miami Herald journalist, staff writer Joel Achenbach, witnessed the search and subsequent arrest of Aristides Morejon while on a newsgathering assignment at the Miami International Airport. Achenbach, conducting research for an article to be printed in the Miami Herald Sunday Tropic Magazine, had obtained permission from Metro-Dade police to accompany officers on duty at the airport. While on routine duty, three Metro-Dade police officers arrested Morejon and his traveling companion in an airport public concourse after a consensual search of their luggage revealed four kilos of cocaine. Achenbach witnessed the entire episode, standing five to six feet away and taking notes. Certain details of the search and arrest, some of which allegedly were inconsistent with the officers' account of the arrest, were later printed in Achenbach's article. It is undisputed that Achenbach did not rely on any confidential sources or information for his article.
The state charged Morejon with trafficking in cocaine. Morejon entered a plea of not guilty and filed a motion to suppress evidence discovered as a result of the airport search, claiming that, although he had lived in New York since 1980, he was not sufficiently fluent in English to understand that he could have refused to consent to the search of his luggage. Morejon also filed a discovery demand for the names and addresses of all persons known to have information relevant to the offense charged, pursuant to rule 3.220(b)(1)(i), Florida Rules of Criminal Procedure. In response to this demand, the state attorney identified Achenbach as having relevant information. After depositions of the police officers involved in the arrest established Achenbach as an eyewitness to the entire event, Morejon had the clerk of the court issue a subpoena duces tecum to Achenbach to appear for a discovery deposition. Achenbach, in conjunction with the Miami Herald, filed a motion to quash the subpoena, claiming a reporter's qualified privilege to refuse to testify under the first amendment to the United States Constitution. The trial court denied the motion to quash and ordered Achenbach to submit to the deposition, finding that no qualified privilege existed with respect to Achenbach's eyewitness observations of the police search and arrest of Morejon. The trial court further concluded that, in the alternative, even if such a privilege existed, a considered weighing of the respective interests involved overcame it.
The Miami Herald petitioned the district court for a writ of certiorari seeking review of the trial court's order. The district court refused to grant the writ, holding that the reporter's qualified privilege simply "has utterly no application to information learned by a journalist as a result of being an eyewitness to a relevant event in a subsequent court proceeding" such as the police search and arrest of Morejon. 529 So.2d at 1208. In order to permit further review the district court certified the aforementioned question to this Court as being of great public importance.
The acknowledged starting point in any examination of a purported first amendment reporter's privilege claim is Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). Branzburg dealt with a trilogy of cases involving reporters brought before grand juries to testify concerning drug trafficking, assassination attempts on the President, and other acts of violence endangering persons and property. The reporters argued that, if forced to respond to subpoenas issued by the respective grand juries and identify their sources of information or disclose other confidences, *579 their informants would refuse or be reluctant to furnish newsworthy information in the future. Thus, sources of newsworthy information would "dry up" and certain information eventually would become unavailable to the public. The reporters asserted that placing such a burden on the newsgathering process made compelled disclosure from reporters constitutionally suspect and required a privileged position for their testimony.
In a plurality opinion authored by Justice White the Supreme Court decided the case adversely to the reporters, rejecting their claim of a qualified privilege. The plurality, however, carefully noted that it was not suggesting that newsgathering did not qualify for any first amendment protection; for, "without some protection for seeking out the news, freedom of the press could be eviscerated." 408 U.S. at 681, 92 S.Ct. at 2656. The plurality limited its holding to grand jury investigations conducted in good faith. Justice Powell, in casting the deciding vote against the reporters in his concurring opinion, emphasized the "limited nature of the Court's holding." Id. at 709, 92 S.Ct. at 2671. He stated further:
As indicated in the concluding portion of the opinion, the Court states that no harassment of newsmen will be tolerated. If a newsman believes that the grand jury investigation is not being conducted in good faith he is not without remedy. Indeed, if the newsman is called upon to give information bearing only a remote and tenuous relationship to the subject of the investigation, or if he has some other reason to believe that his testimony implicates confidential source relationships without a legitimate need of law enforcement, he will have access to the court on a motion to quash and an appropriate protective order may be entered. The asserted claim to privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct. The balance of these vital constitutional and societal interests on a case-by-case basis accords with the tried and traditional way of adjudicating such questions.

Id. at 709-10, 92 S.Ct. at 2671 (Powell, J., concurring) (emphasis added, footnote omitted).
Since Branzburg this Court has twice had occasion to consider the existence and scope of the reporter's privilege in Florida.[1] In Morgan v. State, 337 So.2d 951 (Fla. 1976), this Court overturned a contempt citation issued against a reporter for failing to reveal the identity of the source of information for her article, published in the Pasco Times, containing a synopsis of a sealed grand jury presentment. In deciding whether Morgan was privileged to refuse to reveal her source, this Court adopted the approach taken by Justice Powell in his concurring opinion in Branzburg, i.e., the application of the reporter's privilege in a given case involves striking a proper balance between constitutional and societal interests. We found that the public interest in unencumbered access to information from anonymous sources outweighed the generalized governmental interest in the secrecy of grand jury proceedings sought to be advanced in compelling disclosure of the confidential informant's identity. Thus, in Morgan we recognized for the first time a limited or qualified *580 reporter's privilege against the forced revelation of confidential sources.
This Court further addressed the qualified reporter's privilege recognized by Morgan in Tribune Co. v. Huffstetler, 489 So.2d 722 (Fla. 1986), which arose out of a challenge to a contempt citation issued against a Tampa Tribune reporter. The reporter coauthored a Tribune article announcing that an influential resident had filed a complaint with the ethics commission charging two county commissioners with misuse of office. When the reporter refused to reveal the identity of his confidential source, the circuit court found him guilty of contempt. This Court overturned the contempt citation. Following the case-by-case balancing analysis utilized in Morgan, we held that the limited and qualified privilege that a reporter has to protect his sources of information outweighed the public interests in prosecution for a violation of a statute which basically amounted to a private interest in reputation.[2] 489 So.2d at 724.
In the case at bar, in order to determine whether to compel Achenbach to appear for deposition and answer questions regarding his eyewitness observations of the event in question, we must first inquire into whether Achenbach has any privilege whatsoever to refuse to testify. Only after ascertaining that such a privilege exists must we balance the respective interests involved to determine if Morejon's interest in deposing an eyewitness to his search and arrest outweighs any first amendment concerns in preserving the freedom of the press and unimpeded dissemination of news and information.
The Miami Herald asserts an across-the-board qualified privilege against the compelled disclosure of any information obtained by a reporter while on a newsgathering mission. The Herald contends that the qualified reporter's privilege exists whenever compelled testimony might chill the newsgathering process and that such a privilege can only be overcome upon satisfaction of a three-part test adopted by several of Florida's district courts.[3]See CBS, Inc. v. Cobb, 536 So.2d 1067 (Fla. 2d DCA 1988); Johnson v. Bentley, 457 So.2d 507 (Fla. 2d DCA 1984); Tribune Co. v. Green, 440 So.2d 484 (Fla. 2d DCA 1983), review denied, 447 So.2d 886 (Fla. 1984); Gadsden County Times, Inc. v. Horne, 426 So.2d 1234 (Fla. 1st DCA), review denied, 441 So.2d 631 (Fla. 1983). Contra Miami Herald Publishing Co. v. Morejon, 528 So.2d 1204 (Fla. 3d DCA 1988); Carroll Contracting, Inc. v. Edwards, 528 So.2d 951 (Fla. 5th DCA), review denied, 536 So.2d 243 (Fla. 1988); Satz v. News & Sun-Sentinel Co., 484 So.2d 590 (Fla. 4th DCA 1985), review denied, 494 So.2d 1152 (Fla. 1986).
We adhere to the district court's conclusion that there is no privilege, qualified, limited, or otherwise, which protects journalists from testifying as to their eyewitness observations of a relevant event in a subsequent court proceeding. The fact that the reporter in this case witnessed the event while on a newsgathering mission does not alter our decision.[4] Holding that the limited and qualified privilege set forth by this Court in Morgan and Huffstetler has absolutely no application in this case makes it unnecessary to balance the respective interests involved. See Huffstetler, 489 So.2d at 725 (Boyd, C.J., dissenting).[5] While we are mindful of the importance *581 of a vigorous and aggressive press, we fail to see how compelling a reporter to testify concerning his eyewitness observations of a relevant event in a criminal proceeding in any way "chills" or impinges on the newsgathering process. Unlike the factual situations in Branzburg, Morgan, and Huffstetler, there is no confidential source involved in this case which may "dry up" if revealed. The only source for Achenbach's article was his own personal observations.
The Herald further contends that requiring reporters to testify in every case which they may have witnessed a relevant event forces reporters to become "testifiers" and hampers their newsgathering abilities; if subjected to unrestricted exposure to subpoenas reporters may become reluctant to seek out the news due to the repeated inconvenience of being called into court to testify as to their knowledge of the case. We disagree that this claim is a valid consideration. The public "has a right to every man's evidence." 8 Wigmore, Evidence § 2192, at 70 (McNaughten rev. 1961). See generally United States v. Bryan, 339 U.S. 323, 70 S.Ct. 724, 94 L.Ed. 884 (1950); Blackmer v. United States, 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375 (1932); Blair v. United States, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919). The privilege not to disclose relevant evidence obviously constitutes an extraordinary exception to this general duty to testify. Garland v. Torre, 259 F.2d 545 (2d Cir.), cert. denied, 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231 (1958); Democratic National Committee v. McCord, 356 F. Supp. 1394 (D.D.C. 1973). Evidentiary privileges in litigation are not favored, and even those rooted in the constitution must give way in proper circumstances. Herbert v. Lando, 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). As the United States Supreme Court aptly stated in United States v. Nixon, 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974): "Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." The fact that journalists may be somewhat inconvenienced by having to appear in court or other related proceedings does not lessen their duty to testify. Ordinary citizens would not be excused from testifying as to what they observed, and the first amendment should not be interpreted to make journalists' testimony privileged simply because they made their observations while on duty as a reporter.
We cannot discover any case, nor has any been cited, where a court has extended the journalist's limited and qualified privilege to include eyewitness observations of a relevant event in a court proceeding. Indeed, courts which have addressed the issue have held just the opposite. See, e.g., In re Ziegler, 550 F. Supp. 530 (W.D.N.Y. 1982) (journalist who witnessed and reported on assault not excused from testifying before grand jury as to what he observed); Rosato v. Superior Court, 51 Cal. App.3d 190, 124 Cal. Rptr. 427 (1975) (Supreme Court has denied that first amendment shields newsmen from testifying about criminal activity they observed), cert. denied, 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1976); Lightman v. State, 15 Md. App. 713, 294 A.2d 149 (required testimony of reporter who saw drugs being sold), aff'd, 266 Md. 550, 295 A.2d 212 (1972), cert. denied, 411 U.S. 951, 93 S.Ct. 1922, 36 L.Ed.2d 414 (1973); People ex rel. Fischer v. Dan, 41 A.D.2d 687, 342 N.Y.S.2d 731 (newsmen may refuse to divulge to grand jury identity of informant, but they must testify about events they observed personally), appeal dismissed, 32 N.Y.2d 764, 298 N.E.2d 118, 344 N.Y.S.2d 955 (1973); Ex parte Grothe, 687 S.W.2d 736 (Tx.Cr.App. 1984) (reporter stands on same footing as a layperson with regard to personal observations of alleged criminal activity and therefore must testify), cert. denied, 474 U.S. 944, 106 S.Ct. 308, 88 *582 L.Ed.2d 286 (1985). We align ourselves with these decisions.
Therefore, we answer the certified question in the negative and approve the district court's decision.
It is so ordered.
EHRLICH, C.J., and OVERTON, SHAW, GRIMES and KOGAN, JJ., concur.
BARKETT, J., concurs specially with an opinion.
BARKETT, Justice, concurring specially.
I agree with the majority that Miami Herald reporter Joel Achenbach is not shielded by a qualified privilege under these facts. However, I respectfully disagree with the analysis to the extent that it seems to find no first amendment interest implicated when a reporter acts in his professional capacity on a newsgathering assignment, and that it is "unnecessary to balance the respective interests involved." Op. at 580. That analysis misapplies settled rules of constitutional interpretation established by this Court and the United States Supreme Court.
The majority in the instant case correctly observes that the United States Supreme Court, in Branzburg v. Hayes, 408 U.S. 665, 681, 92 S.Ct. 2646, 2656-57, 33 L.Ed.2d 626 (1972), recognized that newsgathering is protected by the first amendment. Op. at 578-579. Thus, when a reporter is subpoenaed to testify about information acquired as part of a newsgathering mission, some first amendment interests clearly are implicated. The question of whether a qualified privilege exists under those circumstances is answered "`on a case-by-case basis,'" op. at 579 (emphasis in original) (quoting Branzburg, 408 U.S. at 710, 92 S.Ct. at 2671 (Powell, J., concurring)), after measuring the effect the government action has on the first amendment interests, and then balancing that effect against other societal interests.
The balancing test has been applied consistently by the United States Supreme Court. In Branzburg, the Court found that compelling reporters to testify in a criminal grand jury investigation about events observed while covering news stories was merely an incidental burden on first amendment interests. The Court then said that society's interests to have effective criminal grand jury investigations outweighed the incidental burden. Most recently, a unanimous Court cited Branzburg and applied the balancing test to hold that a reporter was protected from prosecution under a Florida statute for disclosing testimony that he gave to a grand jury. Butterworth v. Smith, ___ U.S. ___, ___, 110 S.Ct. 1376, 1380, 108 L.Ed.2d 572 (1990) ("We must thus balance respondent's asserted First Amendment rights against Florida's interests in preserving the confidentiality of its grand jury proceedings.").
Likewise, this Court has applied that same basic analysis in Morgan v. State, 337 So.2d 951 (Fla. 1976), and Tribune Company v. Huffstetler, 489 So.2d 722 (Fla. 1986). In Morgan, a reporter was cited for contempt for refusing to disclose the source of the synopsis her newspaper published about a sealed grand jury presentment in a civil investigation. We began our analysis by recognizing that the contempt citation burdened a first amendment interest because newsgathering is an "essential precondition to dissemination of news." Morgan, 337 So.2d at 954. Then we examined the government's interests. Finally, we balanced the interests and found that "[o]n this record, the balance must be struck in favor of the public interest in unencumbered access to information from anonymous sources." Id. at 956. Again, in Huffstetler, we started by recognizing that a subpoena compelling a reporter to testify in a state attorney's investigation was a burden on the same first amendment interests that underlie Morgan. After examining the competing interests, we held that the first amendment interests outweighed the public interest in prosecuting reporters for not revealing sources of confidential information about ethics complaints against public officials.
I believe that first amendment interests clearly are implicated here, but that a proper *583 balancing of the interests weighs against a qualified privilege under the facts presented.
NOTES
[1] In Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), the Court openly acknowledged that its holding was not binding on state courts and legislatures, stating:

There is also merit in leaving state legislatures free, within First Amendment limits, to fashion their own standards in light of the conditions and problems with respect to the relations between law enforcement officials and press in their own areas. It goes without saying, of course, that we are powerless to bar state courts from responding in their own way and construing their own constitutions so as to recognize a newsman's privilege, either qualified or absolute.
Id. at 706, 92 S.Ct. at 2669. The Florida Legislature has declined to adopt any statutory reporter's privilege or "shield" statute. Therefore, in Florida, any reporter's privilege is based on the protections of the first amendment to the United States Constitution and the corresponding protections offered by the Florida Constitution in article I, section 4.
[2] The implicated commissioners filed a complaint alleging violation of § 112.317(6), Fla. Stat. (1981), which prohibits disclosure of either one's own intent to file an ethics complaint or the existence of a complaint already filed with the state ethics commission.
[3] The three-part test consists of the following elements: (1) is the information relevant, (2) can the information be obtained by alternative means, (3) is there a compelling interest in the information? The test was originally formulated in Garland v. Torre, 259 F.2d 545 (2d Cir.), cert. denied, 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231 (1958), and was adopted by three of the four dissenting justices in Branzburg.
[4] Because of our holding we need not address the merits of the three-point test.
[5] In his dissent in Tribune Co. v. Huffstetler, 489 So.2d 722 (Fla. 1986), Chief Justice Boyd, joined by Justice Shaw, emphasized

the difference between a reporter's receiving information from a confidential source about the commission of a crime and the reporter himself witnessing the commission of a crime. In the former situation the qualified privilege to refuse to answer... may or may not prevail depending on the circumstances. In the latter situation there is no qualified privilege. The reporter has the same duty to cooperate with the legal and judicial authorities as is imposed on every other citizen.
Id. at 725.