610 So.2d 1276 (1992)
Robert Joe LONG, Appellant,
v.
STATE of Florida, Appellee.
No. 74017.
Supreme Court of Florida.
October 15, 1992.
Rehearing Denied January 27, 1993.
James Marion Moorman, Public Defender and Steven L. Bolotin, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen. and Robert J. Landry, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Robert Joe Long appeals his conviction of first-degree murder and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We reverse the conviction *1277 and sentence and remand for a new trial.
Long was indicted for first-degree murder in this case on December 6, 1984. Originally, he was convicted and sentenced to death in April 1985. However, on appeal, we reversed that conviction on the grounds that Long's confession was obtained in violation of his right to counsel under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). See Long v. State, 517 So.2d 664 (Fla. 1987), cert. denied, 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 216 (1988). On remand, an attempt to impanel a jury for his new trial in Pasco County failed and venue was changed to Fort Myers where the new trial, which is the subject of this appeal, was conducted.
At the new trial, the State first introduced evidence to establish the victim's identity. The facts reflect that the remains of Virginia Johnson, the murder victim in this case, were discovered on November 6, 1984, off a dirt road in Pasco County. The body was badly decomposed. There was a piece of cloth tied around the victim's neck and a little bit of dark or grey hair on the skull. Additionally, a shoelace was found around the victim's neck and appeared to have been used as a ligature. A mass of blonde hair and a pair of women's underpants were found near the body. An autopsy was performed and it was determined that the victim had been dead from ten to fifteen days. The medical examiner noted that the shoelace was wrapped twice around the neck and double knotted. A second shoelace was also found at the crime scene near the small bones of one hand. There were two loops tied in this shoelace, each big enough for a human wrist. The medical examiner testified that the cause of death was "homicidal violence, probably garrotment," although she could not absolutely rule out other causes of death. Additionally, she could not tell whether the victim was conscious or unconscious at the time of death.
Although the body had been found on November 6, 1984, testimony reflected that it was not until November 18 that the victim was reported missing. A friend reported that she had been missing for about a month, and evidence established that she had officially last been seen by a Hillsborough County nurse on October 15, 1984. After she was reported missing, her parents were contacted and she was identified through the use of her dental records.
After the victim's identity had been established, the State introduced testimony, over defense counsel's objection, from Lisa McVey, a woman who had been raped by Long. In connection with that rape, Long was convicted of kidnapping and sexual battery. The court instructed the jury that the evidence of these other crimes was to be considered only for the limited purpose of proving Long's motive, plan, and identity.
McVey testified to the following. In November 1984, she was working at a doughnut shop in Tampa. On November 3, she got off work around 2:30 a.m. and began to ride home on her bicycle. Before she got home she was abducted at gunpoint and blindfolded. Her abductor dragged her into the passenger seat of his car, loosely tied her hands, and told her to strip. She did so. Because she was blindfolded, she never saw her abductor. However, from underneath the blindfold, she saw that she was in a maroon car with a white interior that had the word "Magnum" on the dashboard. Judging from sounds, it appeared they were driving on the interstate.
They arrived at an apartment building. She had gotten dressed again and her abductor took her up a flight of stairs. Once inside, he raped her four or five times in rapid succession. She saw and felt a gun and believed he had a knife. Several hours before daybreak, the rapes stopped and her abductor slept most of the following day. He untied her hands and feet before daybreak. However, she did not try to get away because she felt that if she cooperated he might not kill her.
Around three o'clock the next morning, her abductor awakened her, told her it was *1278 time to go, and asked where she lived. On the way, they stopped at an automatic bank teller machine. When they stopped, she could see a Howard Johnson's and a Quality Inn located nearby. Her abductor then dropped her off in a parking lot at the intersection of Hillsborough and Rome. He told her to describe him to the police as an "ugly man with a beard." However, as far as she could see or feel, he appeared to have a pockmarked face, a mustache but no beard, small ears, and brown hair. After he left the area, she walked home and called the police.
The investigating officer stated that the police located the only automatic teller machine in Tampa that was near both a Quality Inn and a Howard Johnson's. The bank had recorded a transaction on its automatic teller machine at 3:49 a.m. on the day the victim was taken to the parking lot. Bank records revealed that the personal identification number used in the automatic teller machine transaction belonged to Long. The officer also testified that a motor vehicle records search indicated that Long owned a Dodge Magnum automobile.
Further testimony reflected that two other detectives received information that a maroon Dodge Magnum automobile was possibly involved in the rape. On November 15, 1984, they saw such a vehicle driven by a man matching the description McVey had provided. The detectives stopped the vehicle and asked the driver for identification. The driver produced a driver's license that identified him as Long. The officers then fabricated a story to see if they could get Long to consent to a search. He declined but did allow them to photograph him and his car. Going to the address Long provided as his residence, the officers found a strip of stores with what appeared to be apartments upstairs. Based on this information, warrants were subsequently obtained for his arrest and for searches of his automobile and apartment. Long was arrested on November 16, 1984, and was interrogated at the police department, where he admitted abducting and raping McVey.
Other testimony revealed that the police impounded Long's car at the time of his arrest. Subsequently, sweepings from his vehicle were evaluated to determine if there was any evidence to connect Long with the murder of Virginia Johnson. A specialist in hair and fiber analysis testified that he found one forcibly removed, bleached-blonde Caucasian hair that was consistent with Johnson's hair. The expert also testified that he found a single "red lustrous nylon carpet fiber" in the mass of blond hair found by Johnson's body and that this carpet fiber matched the carpet found in Long's automobile. However, the expert acknowledged that this was a very common carpet fiber that was manufactured throughout the country.
The State next produced, over defense counsel's objection, a videotaped interview of Long by CBS News as Williams rule[1] evidence. CBS had interviewed Long for approximately ninety minutes on November 25, 1986. That interview took place after the first Pasco County trial and conviction in this case and after Long had entered into a plea agreement in Hillsborough County wherein he pleaded guilty to eight murders.[2] However, only an edited two-minute portion of that interview was supplied by CBS for viewing by the jury. Before showing the videotape, the trial judge instructed the jury that evidence of other crimes allegedly committed by Long was to be considered only to prove motive, plan, and identity. The videotape was then shown to the jury.
Subsequently, the State produced evidence regarding four of the murders to which Long had pleaded guilty in the Hillsborough County plea agreement. Graphic evidence was presented regarding each murder victim. One decomposed body had been found with a ligature around her neck *1279 and with her wrists bound behind her back. Testimony reflected that the cause of death was strangulation. The second victim was found, nearly nude, in a wooded area; her hands had been tied behind her back with a bloody, green t-shirt; articles of her clothing were lying in the limb of a tree; her arms were tied together; her throat had been cut; and she had suffered severe head injuries. Three photographs of the victim were presented to the jury. Testimony regarding the third murder victim reflected that the victim had been found, semi-nude, in an orange grove and she was bound with cords and shoelaces. Two photographs of this body were presented to the jury. Finally, evidence of the fourth murder victim was presented. Testimony showed that the victim's nude body was found off the side of a road. There were no ligatures or bindings found on the body or at the scene, but there were ligature marks on the neck and forearms. The medical examiner concluded that her death was caused by strangulation.
Next, the State presented hair, fiber, and tire track evidence from each of the crimes. Defense counsel objected to the tire track evidence because no such evidence had been present in the instant case. Nevertheless, the trial judge allowed the evidence. Additionally, the fiber analyst expert testified that the fibers taken from each of the victims matched the fiber found in the mass of blond hair found next to the victim in this case. Evidence of other fibers, not present in this case but present in the other cases, was also introduced and testimony connected these fibers to Long. Similarly, hair sample evidence was presented that connected the victims to Long.
Finally, the State introduced into evidence the fact that Long had pleaded guilty in accordance with the Hillsborough County plea agreement to each of the Hillsborough County murders outlined above. The State then rested. Long's counsel moved for a mistrial based on the State's use of Williams rule evidence. Counsel argued that the murders were not similar enough to the charged crime to justify admission of evidence regarding those murders. Additionally, counsel noted that the court had heard nearly three days of testimony, but that only four hours of that testimony actually related to the murder at issue. Counsel contended that the Hillsborough County murders, rather than the crime for which Long was charged, had become the central feature of the trial. The motion for mistrial was denied.
Subsequently, the jury returned a guilty verdict, recommending by a nine-to-three vote that the death penalty be imposed. The trial judge sentenced Long to death and this appeal followed.
Long claims that the trial judge erred by allowing the State to introduce: 1) edited portions of the CBS videotaped interview of Long while denying Long access to the remaining portions of the videotape; 2) the televised portion of the CBS videotape because it showed only criminal propensity and because it referred to the Hillsborough County murders that Long claims were improperly introduced as Williams rule evidence; 3) evidence of other crimes that became the overwhelming feature of the trial; 4) irrelevant and highly prejudicial Williams rule evidence of a rape for which Long was convicted; and 5) evidence of four Hillsborough County murders to which he had previously confessed. For the reasons expressed below, we find that several of these claims have merit and, consequently, that Long is entitled to a new trial.[3]
We first address Long's contentions regarding the CBS videotaped interview of Long. Long argues that the State's introduction and use of selected portions of the interview deprived Long of his basic state and federal constitutional rights including the right to due process, the right to a fair trial, the right to compulsory process for obtaining material evidence, the right to present evidence in his own behalf, and the right to confrontation of adverse witnesses because Long was denied access to the remaining portions of the taped interview. *1280 We agree. Originally, the trial judge granted Long's pretrial motion compelling CBS to comply with a subpoena to produce the entire unedited videotaped interview. CBS moved to quash the subpoena under the First Amendment. When the trial judge denied CBS's motion, CBS appealed this issue to the Second District Court of Appeal. Despite defense counsel's objection and the fact that this issue was pending before the district court, the trial judge elected to proceed with the trial.
During the course of the trial but before the district court's decision, CBS did produce an additional thirteen-minute videotape consisting of "context out-takes" taken from the ninety-minute interview. That same day, the district court issued its opinion requiring CBS to release the entire interview. CBS, Inc. v. Cobb, 536 So.2d 1067 (Fla. 2d DCA 1988). By that time, however, the guilt phase of the trial was already completed, and the trial judge refused to order CBS to produce the entire videotape as requested by the defense. The trial judge ruled that the thirteen-minute portion was sufficient to determine whether other portions of the interview should have been admitted.
It is well established that, when the State offers in evidence a part of a confession or admission, the accused, in the interest of fairness, is entitled to bring out the remainder of that confession or admission. This concept is expressly set forth in section 90.108, Florida Statutes (1987), which provides in part:
When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement that in fairness ought to be considered contemporaneously.
This requirement was clearly violated in this instance. We therefore find that the trial judge erred in refusing to stay the proceedings until CBS complied with the court orders and produced the entire videotaped interview. As noted by the Second District Court of Appeal in Cobb, "Long is at somewhat of a disadvantage in that he cannot determine whether [the fairness of introducing other portions of the videotaped interview] arises in this case  or even whether there is anything on the tape he may want the jury to hear  without first viewing the entire statement." 536 So.2d at 1070. The law is clear that, once the State opened the door by introducing Long's statements during the interview, Long was entitled to have the entire interview or portions thereof placed into evidence in the interest of fairness.
We disagree, however, with Long's contention that no part of the videotape is admissible because it merely shows criminal propensity and because it refers to the Hillsborough County murders that Long claims were improperly introduced as Williams rule evidence. We find that, upon remand, the videotape may be admissible as an admission against interest; however, whether portions of it are irrelevant or whether the probative value of some of Long's statements are substantially outweighed by unfair prejudice are issues that can be addressed in the new trial. We emphasize that, pursuant to an order of this Court, CBS has now produced a videotape of the entire interview, and that videotape is currently available to both the State and Long.
Long next challenges the introduction of evidence regarding other crimes to which he pleaded guilty under a plea agreement entered into in Hillsborough County after the first trial of this cause but before the reversal of the first conviction in this case. Long asserts that he was deprived of a fair trial and due process because the prosecution was allowed to make the evidence of these other crimes the overwhelming feature of this trial. He also asserts that these other crimes were improperly admitted as Williams rule evidence.
The record reflects that these other crimes did become the central feature of this trial. Approximately four hours of testimony was presented concerning the murder in issue in this case while more than three days of testimony was presented concerning these other offenses. Under the unique circumstances of this case, including the plea agreement, we find that the four other murders could not be presented *1281 at this trial. We decline, however, to hold that all of the evidence regarding the McVey incident is inadmissible. We note that the confession Long made in the McVey case is valid and was made before he entered into the Hillsborough County plea agreement.[4] Long was initially apprehended, as previously noted, through information supplied by McVey, and it was that arrest and the subsequent examination of his vehicle that supplied hair and fiber samples connecting him to the victim in this case. As such, that evidence is clearly admissible to establish Long's identity and to connect him to the victim in this case. However, in our view, the details of Long's treatment of McVey in his apartment and his guilty plea are not admissible under the circumstances of this case.
Finally, with regard to the penalty phase, we note that the Hillsborough County pleas and convictions were considered as factors in aggravation against Long. In the Hillsborough County case, Long pleaded guilty to eight murders in return for, among other things, the promise that his guilty pleas would not be used against him in other subsequent penalty proceedings. Although that agreement was drafted to apply only to Hillsborough County and the Thirteenth Judicial Circuit, the record of the plea proceedings in that case indicates that both parties understood the agreement to mean that the pleas could not be used adversely against Long in any subsequent proceeding. Obviously, at the time he entered into that agreement, the first trial in this case had been completed and the death sentence had been imposed. Thus, although the record clearly reflects Long's understanding that offenses for which he was convicted before he entered into the plea agreement could be used against him, there was no mention of the use of Long's Hillsborough County pleas in a subsequent retrial of this case. Little doubt exists that one of the major benefits intended to be received by Long in entering into the plea agreement was that his guilty pleas could not be used against him in subsequent proceedings. Consequently, to ensure the continued validity of the Hillsborough County plea agreement, we find that it was error to allow evidence of those murders to be introduced in aggravation against him in this case. We emphasize, however, that our ruling in this case does not preclude the introduction of relevant evidence regarding offenses for which Long was convicted before he entered into the Hillsborough County plea agreement.[5]
Accordingly, we reverse Long's conviction and sentence of death and remand for a new trial at which: (1) the CBS interview may be admitted into evidence provided the entire videotape is available for viewing by the jury; (2) evidence of the murders to which Long entered guilty pleas in the Hillsborough County plea agreement may not be admitted under the circumstances of this case; (3) testimony concerning the McVey incident may be admitted to identify Long in this case so long as the details of Long's treatment of McVey in his apartment and his subsequent plea of guilty in that case are excluded; and (4) evidence of the Hillsborough County guilty pleas and convictions resulting from Long's plea agreement may not be admitted as aggravating factors given the terms of the plea agreement.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES and HARDING, JJ., concur.
KOGAN, J., concurs in result only as to the conviction, and concurs as to the sentence.
NOTES
[1] Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).
[2] Long was first convicted and sentenced to death in this case in April 1985. He pled guilty to the Hillsborough County murders on September 23, 1985. The plea agreement is described in Long v. State, 529 So.2d 286 (Fla. 1988).
[3] We note that a significant part of the evidence that we determine to be inadmissible in this second trial was not available or presented in the first trial.
[4] In Long, 517 So.2d 664, we determined that Long's confessions to a number of murders had been obtained in violation of his right to counsel. However, his confession regarding the McVey incident was obtained before Long indicated that he needed an attorney and before his right to counsel had been violated.
[5] See, for example, the convictions used in aggravation against Long in the penalty phase proceeding of the Michelle Simms murder in Hillsborough County and described in our affirmance of Long's conviction and sentence in that proceeding issued in Long v. State, 610 So.2d 1268 (Fla. 1992).