692 So.2d 924 (1997)
Merlan DAVIS, Appellant,
v.
STATE of Florida, Appellee.
No. 94-04304.
District Court of Appeal of Florida, Second District.
March 26, 1997.
Rehearing Denied April 23, 1997.
*925 James Marion Moorman, Public Defender, Bartow and Karen Kinney, Assistant Public Defender, Clearwater, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee and Helene S. Parnes, Assistant Attorney General, Tampa, for Appellee.
FRANK, Judge.
Merlan Davis was convicted of aggravated assault with a motor vehicle and sentenced to probation for five years. We have considered each of the eight issues raised on appeal and find merit in Davis's argument that his attempt to depose a reporter with relevant information was frustrated by the improper application of a qualified reporter's privilege. We vacate the judgment and sentence and certify the following question to the Florida Supreme Court as one of great importance:
IN LIGHT OF THE DECISIONS IN CBS, INC. V. JACKSON, 578 So.2d 698 (Fla.1991), AND MIAMI HERALD PUBL'G. CO. V. MOREJON, 561 So.2d 577 (Fla.1990), DOES FLORIDA LAW PROVIDE A QUALIFIED REPORTER'S PRIVILEGE AGAINST THE DISCLOSURE OF NON-CONFIDENTIAL INFORMATION RELEVANT TO A CRIMINAL PROCEEDING?
Our own assessment of the certified question is that the privilege's applicability in criminal proceedings is limited to those matters involving confidentiality. Our decision is in conformity with the First District's decision in Gold Coast Publications, Inc. v. State, 669 So.2d 316 (Fla. 4th DCA), rev. denied, 682 So.2d 1099 (Fla.1996), and consistent with our decision in Tampa Television, Inc. v. Norman, 647 So.2d 904 (Fla. 2d DCA 1994). A brief exposition of the facts is appropriate.
The events underlying Davis's conviction began with the January 1990 termination of his romantic relationship with Nicole Terry. In the months following, Davis's behavior towards Terry became increasingly hostile and in May of 1991 she successfully petitioned for an injunction proscribing future contact. The record indicates that Davis largely ignored the injunction. Specifically, on December 27, 1991, while in her car driving over the Skyway Bridge, Terry observed Davis following closely behind her. An erratic and reckless chase ensued. The chase abruptly finished when Davis's car collided with the rear of Terry's. Throughout the proceedings below, Davis has consistently seized upon Terry's admission that she stepped on her car brakes just before the accidentthe implication being that she intended and, in fact, caused Davis to strike the rear of her car.
The accident and the precedent events became the focus of pretrial media attention.[1] Diane Mason, then with the St. Petersburg Times, interviewed Terry and authored an article touching upon the details of the collision. *926 Davis attempted to depose Mason, asserting that she was a potential source of impeachment evidence against Terry. The newspaper, however, asserted that the qualified reporter's privilege applied, and, although Mason had since left its employment, it refused to provide information about her then current location or place of employment.
After a hearing on Davis's motion to compel discovery, at which the newspaper was represented, the trial court held that the qualified reporter's privilege applied to nonconfidential information, specifically relying upon our decision in Tribune Co. v. Green, 440 So.2d 484 (Fla. 2d DCA 1983). Holding the privilege applicable, the court then applied the three-part test expressed in Gadsden County Times, Inc. v. Horne, 426 So.2d 1234 (Fla. 1st DCA 1983), appropriate to a determination of whether the privilege, when properly invoked, is outweighed by competing interests in any particular case.[2] Davis's motion was denied.[3] Our reversal of this decision is grounded upon our conclusion that Green is no longer viable.
Florida law provides for the existence of a qualified reporter's privilege based upon the guarantees of freedom of speech and of the press found in the United States and Florida Constitutions.[4] An assertion of the privilege was first upheld in Morgan v. State, 337 So.2d 951 (Fla.1976), which adopted the case-by-case balancing approach described by Justice Powell in his concurring opinion in Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972).[5] The privilege protects the integrity of the news-gathering process. It is applicable to both criminal and civil proceedings. See Tribune Co. v. Huffstetler, 489 So.2d 722 (Fla.1986). In any particular case, however, other societal interests may outweigh those protected by the privilege and, thus, news organizations may be required to divulge otherwise privileged information.
In criminal proceedings, "the asserted claim to privilege should be judged on its facts by the striking of a proper balance between the freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct." Branzburg, 408 U.S. at 709, 92 S.Ct. at 2671, 33 L.Ed.2d at 656 (1972) (Powell, J., concurring). In Green, this court applied the balancing test and vacated an order requiring a reporter to disclose information obtained during an interview with a criminal defendant. In Waterman Broadcasting of Florida, Inc. v. Reese, 523 So.2d 1161 (Fla. 2d DCA 1988), in circumstances similar to Green, we held the privilege applicable but outweighed by the state's interest in obtaining a defendant's confession. In both cases we found the privilege applicable to nonconfidential information and employed a balancing test.
Subsequently, in two cases involving criminal proceedings, the Florida Supreme Court has held that no privilege exists which "protects journalists from testifying as to their eyewitness observations of a relevant event." Miami Herald Publ'g Co. v. Morejon, 561 So.2d 577, 580 (Fla.1990); CBS, Inc. v. Jackson, 578 So.2d 698, 700 (Fla.1991). In Morejon, a reporter witnessed law enforcement's search and seizure of a criminal defendant. The court noted the absence of any confidential sources and thus distinguished the case from Branzburg. Likewise, in CBS, Inc., the court held that the videotape of an arrest was physical evidence which "does not implicate any sources of information." CBS, Inc., 578 So.2d at 700. In both cases, the court *927 found the privilege inapplicable and the balancing of interests unnecessary.[6]
We can perceive no principled distinction between the "relevant events" involved in the CBS, Inc. and Morejon cases, and the information sought through discovery in the matter at hand. A victim's explanation of how a crime occurred is an event relevant to the criminal proceeding. Equally relevant is a criminal defendant's confession. See Waterman. The diacritical notion flowing from CBS, Inc. and Morejon, is that of confidentiality. In short, the privilege has no application in a criminal proceeding unless based upon the potential implication of a confidential source. Cf. Huffstetler (upholding assertion of privilege where need for source's confidentiality outweighed interests implicit in criminal statute).
Our decision is consistent with Tampa Television, Inc. v. Norman, 647 So.2d 904 (Fla. 2d DCA 1994), in which this court denied a petition for certiorari challenging the circuit court's refusal to apply the qualified privilege to nonconfidential information in a civil action.[7] Moreover, we express agreement with the Fourth District's decision in Gold Coast Publications, Inc. v. State, 669 So.2d 316 (Fla. 4th DCA), rev. denied, 682 So.2d 1099 (Fla.1996), which is factually similar to the instant case. Because the information sought did not implicate confidentiality, neither the St. Petersburg Times nor Diane Mason may be the beneficiaries of the qualified reporter's privilege. We vacate Davis's judgment and sentence and remand for further proceedings consistent with this opinion.
SCHOONOVER, A.C.J., and BLUE, J., concur.
NOTES
[1] The record indicates that Terry was interviewed by several news organizations culminating, perhaps, with a paid appearance on the television program "Inside Edition." The events were publicized as an instance of "stalking," an activity which has subsequently become the focus of a criminal statute. § 784.048, Fla.Stat. (1995) (effective date July 1, 1994).
[2] The three Gadsden tests are: (1) whether the information sought is relevant, (2) whether the same information is available through alternative sources, and (3) whether there is a compelling need for the information.
[3] At the hearing on his motion to compel discovery, Davis conceded that an alternative source existed which could provide the same information.
[4] U.S. Const. amend. I; Fla. Const. art. I, § 4.
[5] While many states have enacted "shield statutes," in Florida the reporter's privilege derives from case law. Cf. Cal.Evid.Code § 1070 (1993); N.Y.Civ. Rights Laws § 79-h (1996). In Branzburg the majority noted that state legislatures and courts were "free, within First Amendment limits, to fashion their own standards in light of the conditions and problems with respect to the relations between law enforcement officials and press in their own areas." Branzburg, 408 U.S. at 706, 92 S.Ct. at 2669, 33 L.Ed.2d at 654.
[6] In CBS, Inc., the court disapproved of two of our earlier decisions which had applied the privilege to a discovery request for unpublished photographs and videotape in criminal proceedings. CBS, Inc., 578 So.2d at 700 n. 2 (noting disapproval with CBS, Inc. v. Cobb, 536 So.2d 1067 (Fla. 2d DCA 1988), and Johnson v. Bentley, 457 So.2d 507 (Fla. 2d DCA 1984)).
[7] We express no opinion regarding the qualified privilege's applicability in civil proceedings.