David **KIDWELL**, Petitioner,

v.

Charles A. **McCUTCHEON**, Sheriff of Palm Beach County, Respondent.

No. 96–2888–CIV.

United States District Court,
S.D. Florida.

Oct. 30, 1996.

Sanford Lewis Bohrer, Holland & Knight, Miami, FL, for Petitioner.

Don Rogers, Assistant Attorney General, West Palm Beach, FL, for Respondent.

### EXPLANATORY MEMORANDUM ON ORDER GRANTING MOTION FOR HABEAS CORPUS RELIEF

FERGUSON, District Judge.

■ This Matter came before the Court on Petitioner's Emergency Motion for Interim Relief Staying Judgment and Sentence Pending Ruling on Emergency Petition For Wit of Habeas Corpus. Petitioner David Kidwell ("Kidwell"), a newspaper reporter, was adjudged in contempt and sentenced for refusal to give testimony in a state attorneys investigation regarding a story written about a high profile murder case. Kidwell's Emergency Motion for Habeas Corpus Relief, on federal constitutional grounds,[1] was granted on October 21, 1996. This memorandum explains the basis for the order granting relief.

### Background

On or about October 21, 1994, seven-year-old Christina Holt died after a beating inflicted by her stepfather Walter John Zile ("Zile"). On October 27, 1994, Zile was arrested for first-degree murder after giving an audiotaped confession as to the violent attack which caused the child's death. Eleven days after the arrest, Kidwell interviewed Zile in the Palm Beach County Jail and wrote a lead story focusing on the confession. That story appeared in the *The Miami Herald* on November 5, 1994.

After hearing the evidence at trial, which included the audiotaped confession and Zile's testimony, the jury deadlocked with eleven jurors voting for first-degree murder and one holding out for second-degree murder. Zile was not questioned about statements given to Kidwell which might have differed from statements made in the audiotaped confession. No attempt was made to call Kidwell as a witness in the State's case-in-chief or in rebuttal.

In preparation for the new trial, the State listed and subpoenaed Kidwell. In response, Kidwell filed a motion to quash the subpoena which was denied. Kidwell then filed a petition for Writ of Certiorari with the Second District Court of Appeal. The petition was denied on August 19, 1996. The State then attempted to depose Kidwell pursuant to the discovery rules. Kidwell objected and a motion to quash the subpoena for deposition was granted. The State then subpoenaed Kidwell for an investigative deposition. A second motion to quash was not entertained by the Palm Beach County Circuit Court. Kidwell appeared for the deposition, but refused to answer questions. On October 7, 1996, Kidwell was found guilty of indirect criminal contempt, sentenced to 70 days in the county jail, and fined $500. He was taken into custody with the provision that he could purge himself of the contempt by answering the State's questions within six days.

---

1. The claim is that the order compelling testimony violates the First Amendment which provides:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof, or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances. U.S. Const. Amend. 1.

Instead, Kidwell took an appeal and requested a stay of the sentence pending the review.

In denying the petitioner's motion to quash the prosecutor's subpoena, the Honorable Roger Colton cited to, and discussed all of the relevant case law on the journalist's privilege as it has evolved in Florida. Judge Colton finally relied on *Gold Coast Publications, Inc. v. State*, 669 So.2d 316 (Fla. 4th DCA 1996), the latest pronouncement, which holds, that the newsgathering privilege applies only to confidential sources. (relying on *CBS, Inc. v. Jackson*, 578 So.2d 698 (Fla. 1991)).

Kidwell's motion for habeas corpus relief was lodged in this court on October 16, 1996, and was heard on October 21, 1996. On that same day, the Fourth District Court of Appeal denied Kidwell's motion to stay the sentence. The appeal from the judgment and sentence for contempt is pending.

### State Law On Journalist's Privilege

The holding in *CBS, Inc.* was confined to the narrow issue presented by the facts. During a law enforcement operation, Jackson was arrested for cocaine possession. 578 So.2d. at 699. The arresting officer's account of the arrest was inconclusive, presumably on the issue of the validity of the arrest. *Id.* A CBS news team videotaped portions of the law enforcement operation which information was sought by Jackson. *Id.* CBS resisted the defense subpoena, asserting a broad qualified privilege against the compelled disclosure of any information obtained while on a newsgathering mission.

By all accounts, the eyewitness information sought by Jackson was highly relevant, necessary to a proper presentation of the case, and unavailable from other sources. A finding to that effect was made by the trial court

in a balancing of First Amendment and competing societal interests. In its holding that there was no privilege, qualified or otherwise, on the facts of the case, the high court pronounced what some state intermediate appellate courts have interpreted as a blanket rule-that no First Amendment privilege is implicated where news information sought from a journalist is nonconfidential. The supreme court's citation to, and reaffirmation of, its earlier opinion in *Miami Herald Pub. Co. v. Morejon*, 561 So.2d 577 (Fla.1990), weighs against the holding of *Gold Coast* relied upon by the trial court. *Morejon* turned on the fact that the reporter was an eyewitness to the event, more so than that the information was nonconfidential.

In *Morejon* the District Court of Appeal noted that the Florida Supreme Court had never considered whether the qualified journalist privilege should be extended to include nonconfidential sources of information. *Miami Herald Pub. Co. v. Morejon*, 529 So.2d 1204, 1207 (Fla. 3d DCA 1988).[2] Answering the certified question the high court held that there was no qualified privilege in nonconfidential information about a crime *to which the journalist was an eyewitness.* Still unanswered, by the high court, and now presented in this case, is whether the qualified privilege extends to nonconfidential *second-hand* [3] information obtained by a journalist in newsgathering activities. If the privilege does not apply in this case as a matter of law, there is a question whether any newsgathering activity remains protected by the First Amendment.[4]

State cases which hold that the newsgathering privilege does not extend to nonconfidential eyewitness information learned by a journalist in a newsgathering activity, appear

---

**2.** The undersigned was a member of the three-judge panel in *Morejon*.

**3.** As used here the term second-hand means previously used by another; not new. The American Heritage Dictionary, p. 1108 (2d coll. ed.1985). Certainly, the statement given by Zile to Kidwell, consistent with the confession given earlier to the police, does not qualify as eyewitness information.

**4.** The state attorney argues here that the information sought is relevant because Kidwell's ac-

count of Zile's confession compared to the confession given to the police could make a difference in persuading the jury on whether the conviction should be for second-degree murder(depraved mind without premeditated design) and first-degree murder (a premeditated design to take life). Whether the testimony, to the extent it elicits Kidwell's subjective assessments, would be admissible, or would have any probative value at all, is for the trial court to decide.

to, but have not departed from tile *Branzburg* [5] holding. They obtain the same result by simply stating as policy, the outcome of the balancing test as enunciated in *Branzburg*. It was the facts of the case, not the label as confidential or nonconfidential, by which the Court determined that a privilege did not apply. Florida Supreme Court cases reach the same result for the same reason.

### Eederal Law on Journalist's Privilege

In this federal circuit the law is clear that even where no confidential source is involved, the government is not entitled to subpoena a reporter to testify regarding the product of a newsgathering activity unless it shows that: (1) the reporter has information relevant and material to the offense charged or the defendant's defense; (2) there is a compelling need for disclosure sufficient to override the reporter's constitutional privilege; and (3) the party seeking the information has unsuccessfully attempted to obtain the information from other sources. *U.S. v. Blanton,* 534 F.Supp. 295 (S.D.Fla.1982) *aff'd* 730 F.2d 1425 (11th Cir.1984). That no confidential source or information is involved is irrelevant to the chilling effect enforcement of a subpoena would have on information obtained by a journalist in his professional capacity. *Id.* at 297. *Blanton,* which relies on cases from other circuits, is factually similar to this case. There the government sought the reporter's testimony at trial for the sole purpose of verifying that statements and quotations attributed to the defendant were factually accurate. *Id.* at 296. No attempt had been made by the government to identify or obtain any alternative source for the information sought. *Id.* In quashing the subpoena, Judge Paine held:

> The First Amendment to the Constitution of the United States requires that a reporter be immune from subpoenas in criminal cases regarding his or her work product unless the party seeking the reporter's testimony first makes a showing of sufficient interest and need to overcome the reporter's constitutional privilege, and then only under appropriate safeguards to pre-

> vent abuse by those having court process available to them.

*Id.*

United States v. Caporale, 806 F.2d 1487 (11th Cir.1986), involved an-effort by the defendants to compel the testimony of two reporters about rumors of a grand jury investigation into a $200,000 bribe of a juror. One of the acquitted defendants, Terence O'Sullivan, had been identified as the source of the rumor. O'Sullivan testified at an evidentiary hearing but denied saying anything about jury tampering to anyone.

The district judge refused to compel the reporter's testimony for the reason that the defendants failed to show that the information sought was unavailable from other sources or necessary to a proper presentation of the case in light of the fact that the same information had been given to them. The Eleventh Circuit affirmed, adopting the standard governing the exercise of a reporter's privileged information as stated in *Miller v. Transamerican Press, Inc.,* 621 F.2d 721, 726 (5th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 238 (1981). The standard is that information may only be compelled from a reporter claiming privilege if the party requesting the information can show: (1) that it is *highly* relevant; (2) necessary to the proper presentation of the case; and (3) unavailable from other sources. *Caporale,* 806 F.2d at 1504.

### Uncertainty in State Law

Trial and intermediate courts in Florida have not yet been given a clear answer whether the high court meant in later cases to dispense with the case-by-case analysis approach announced in *Morejon,* where a journalist claims a constitutional privilege in the nonconfidential, non-eyewitness product of a newsgathering activity. Broadly, the question is whether a journalist is subject to legal process for a prosecutorial investigation to give testimony regarding work product derived from nonconfidential information where the information sought, arguably, is not highly relevant, is not necessary to the

---

**5.** *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct.    2646, 33 L.Ed.2d 626 (1972).

presentation of a case and is available from other sources. That question may be addressed by Florida's Fourth District Court of Appeal where an appeal is pending.

Indeed, the circuit court expressed mild frustration over a perceived lack of authority to consider First Amendment implications. After comparing the audiotaped confession given to police, and later statements made to Kidwell, Judge Colton observed that there were no differences between the two on material matters:

> And if one were to compare that audiotape with quotes attributed to Mr. Zile in this particular November 5, 1994 edition of the Herald, there are differences—maybe not of any great magnitude, maybe not in overall totality but certainly minute details—as to what was watched on television, "Robocop"; as to being furious, and things such as that.

(Motion to Quash Subpoena Transcript, Page 3, Lines 11–19)

Had the court undertaken a balancing of interests, applying the three-part test, the state might have failed in its burden to show a compelling need for the journalist's testimony and that the information sought is unavailable from other sources. Applying the case of *Gold Coast Publications, Inc. v. State*, the trial judge concluded that he was obligated to deny the petitioner's motion to quash the State's subpoena.

### CONCLUSION

All that has been decided here is that the petitioner has set forth a colorable cause for the invocation of this Court's jurisdiction. There has been no determination on the facts. It would be manifestly unjust to require the petitioner to serve the entirety of the seventy-day finite sentence for contempt while state court remedies are exhausted in light of the uncertainty of state law and the clarity of federal law which requires a case-by-case analysis where a reporter claims a First Amendment privilege on the facts as are presented here.

Petitioner shall continue at liberty until further order of this Court.