**Kevin McCARTY, Plaintiff,**

v.

**BANKERS INSURANCE COMPANY, INC., et al., Defendants.**

**No. 4:96–CV–420–MMP.**

United States District Court, N.D. Florida, Tallahassee Division.

June 9, 1998.

**40**

Frederick L. Bateman, Charles J. Schreiber, Bateman & Graham, Tallahassee, FL, Victor L. Chapman, Richard Lee Barrett, Barrett, Chapman & Ruta, Orlando, FL, for plaintiff.

Robert E. O'Quinn, Jr., Webb, O'Quinn & Murphree, Jacksonville, FL, Connie Jo Pecori, Douglas A. Mang, Wendy Russell Wiener, Mang Law Firm, Tallahassee, FL, William R. Mabile, Fuller, Johnson & Farrell, Tallahassee, FL, Dennis S. Silverman, Department of Insurance, Division of Legal Services, Tallahassee, FL, James E. Messer, Jr., John C. Cooper, Henry James Graham, Cooper, Coppins & Monroe, Tallahassee, FL, James Elliott Messer, Messer, Caparello, & Self, Tallahassee, FL, for defendants.

## ORDER

PAUL, Senior District Judge.

The Court has received the parties' mediation report noting an impasse, and this matter is now before the Court for re-consideration of the propriety, *vel non,* of the consented protective order which was entered in this case by the magistrate judge on June 19, 1997 (doc. 203). The following motions, which this Court has held in abeyance pending resolution of the propriety of the protective order, will also be addressed below:

| | |
|---|---|
| Doc. 237 | Plaintiff McCarty's motion to seal his supplemental Rule 26(a)(2) disclosures. |
| Doc. 257 | Parties' joint motion for an order setting dates for pre-trial conference, trial and to reset pre-trial deadlines accordingly. |
| Doc. 277 | Movants Times and Morgan's motion to quash subpoena for deposition and for protective order. |
| Doc. 288 | Defendant Blanton's motion for summary judgment. |
| Doc. 291 | Defendants Bankers, Meehan, and Delano's motion for the court to take judicial notice. |
| Doc. 308 | Defendant Blanton's motion for sanctions. |
| Doc. 311 | Defendants Bankers, Meehan, and Delano's motion for summary judgment. |
| Doc. 343 | Plaintiff McCarty's motion to seal response to motion to compel Plaintiff to answer deposition questions. |

## BACKGROUND:

Plaintiff McCarty originally filed this action against Defendant Bankers Insurance Company and its officers, Meehan and Delano, and against two private investigators, Raynor and Matthews. McCarty later amended his complaint to include claims against an attorney, Blanton, who allegedly served as an intermediary between Bankers and the private investigators. McCarty's claims arose from the private investigation of him undertaken by Bankers which ultimately resulted in an illegal wiretap being placed on McCarty's phone. Investigator Raynor pleaded guilty to federal wiretapping charges as a result of his involvement in the investigation of McCarty. As a result of these events, the Florida Department of Insurance and Treasurer (the "DOI") launched an investigation, pursuant to its authority under the Florida Insurance Code, to ascertain whether Defendant Bankers "has taken ac-

tion to intimidate insurance regulators or otherwise undermine, manipulate or subvert the regulatory process." (Doc. 225, p. 2). In June 1996, the DOI issued investigative subpoenas and a notice and order of investigatory hearing regarding the Bankers' private investigation of its employee, McCarty. As a result of Bankers' and others' refusal to comply, the DOI sought enforcement of the investigative process from Judge Clark of the Leon County Circuit Court, whose denial of the petition was ultimately reversed by the First District Court of Appeal on April 16, 1997, thus permitting the DOI to proceed with its investigation of Bankers. A mandate in accordance with the court's opinion was issued on June 12, 1997.

Six days following entry of the First District's mandate, this Court entered an unopposed protective order (doc. 203) which permitted the disclosure of allegedly confidential and private materials for the purposes of discovery among the parties.[1] The protective order allowed discovery of these materials while reserving for the parties, any claims of privilege and admissibility, which if asserted at subsequent stages of the litigation would be determined by the Court. Three days following entry of the protective order, the DOI re-issued and served the investigative subpoenas for disclosure and production by August of 1997. The parties so served, including among others Defendant Blanton, refused to comply with the demands for disclosure and production, citing this Court's protective order as a basis for their failure to comply therewith. Specifically, Blanton's attorney advised the DOI that Bankers had instructed his client not to respond to the investigative subpoena based upon the attorney/client privilege and the protective order. The DOI requested that Bankers seek clarification or modification of the protective order from this Court to confirm that it is not intended to preclude the DOI from having access to the protected materials as defined thereby. Bankers refused to do so.

1. The unopposed protective order was signed and entered on June 19, 1997 by United States

## A. The Propriety, *vel non*, of the Protective Order

The Florida Department of Insurance, as a non-party, subsequently sought to appear in this action itself, for the limited purpose of seeking clarification or modification of the unopposed protective order. *See* DOI motion for permission to seek clarification/modification (doc. 225). This Court granted the DOI limited standing for the purpose of seeking clarification of the protective order. *See* Transcript of November 14, 1997 hearing at p. 36. At the core of the DOI's motion is its desire to have this Court clarify that the protective order does not preclude it from having access to the protected materials for its investigation. The DOI has since argued that it only desires modification to the extent that the protective order be read so as not to shield the parties thereto from producing materials which came into their possession either prior to the current litigation, or by way of discovery disclosure made pursuant to the protective order. Specifically, the DOI has proposed the following modification language:

Notwithstanding any other provision of this Protective Order, this Protective Order applies only to information or copies of documents ("materials") obtained by and thus in the possession of a party by virtue of the discovery process in this proceeding. The protective Order does not apply to materials in the possession of any person or entity, whether or not a party, prior to litigation being initiated in this proceeding or not obtained or possessed as a result of discovery in this proceeding. Accordingly, the Protective Order does not prevent any person or entity from disclosing materials which were in the person or entity's possession prior to this litigation or not obtained or possessed by that person or entity as a result of discovery in this case. If a person or entity wishes to claim any privilege with respect to any such material, such person or entity should do so in the appropriate court or proceeding. The assembly of protected materials authorized by this Protective Order does not apply to

Magistrate Judge William C. Sherrill, Jr.

materials falling outside the scope of the Protective Order as herein described, because such materials are not protected materials.

Proposed Protective Order Modification, (doc. 320).

The parties, and more ardently, Bankers, have opposed any modification of the protective order. Discovery in this matter had all but ground to a halt prior to entry of the protective order, and Bankers was unwilling to produce many documents absent an order compelling it to do so. Bankers was, however, willing to produce these documents during discovery under a protective order which preserved its right to assert any appropriate privileges should any allegedly privileged information be later introduced at trial. Once the protective order was entered, the parties were able to engage in a more meaningful exchange of information, and discovery has proceeded with much less friction since that time. Bankers' original unwillingness to produce certain information absent a protective order was based upon its contention that most of the now-disclosed materials were protected by the attorney/client privilege.

Pursuant to 28 U.S.C. § 636(b)(1)(A), this Court may only modify the magistrate judge's order if his ruling was clearly erroneous or contrary to law. *See Cipollone v. Liggett*, 785 F.2d 1108, 1120 (3d Cir.1986). As mentioned *supra*, the parties in this action were having a difficult time obtaining discovery that was allegedly the subject of the attorney-client privilege, and they sought entry of the consented protective order to facilitate that discovery. The parties sought and obtained from the magistrate judge the current consented protective order in order to resolve the many pending disputes over disclosure and in order to facilitate the discovery process thus ensuring the just, speedy and inexpensive determination of these disputes.

 While generally, Rule 26(c) requires a party advocating non-disclosure to show good cause for a protective order, often times a court may enter a consented or stipulated protective order requiring confidentiality of disclosure without such a showing. In this scenario, when modification of the consented protective order is requested, it becomes incumbent upon the parties opposing modification to establish the need for continued protection. Indeed, where good cause was not shown for the initial issuance of the protective order, parties seeking to maintain the protective order must establish the need for continued protection (i.e. good cause). *See H.L. Hayden Co. of New York v. Siemens Med. Sys., Inc.*, 106 F.R.D. 551, 555 (S.D.N.Y.1985). While this Court recognizes that some jurisdictions have held that general concerns of case management and efficiency have been held not to establish the requisite good-cause required for the initial issuance of a protective order[2], since the scenario involved herein inevitably results in some disclosure being made in reliance upon the protective order prior to the request for modification, the good-cause analysis for maintaining the protective order differs from the good-cause analysis which would normally accompany an initial request for a protective order. In other words, additional factors such as reliance on the protective order, the status and needs of the person or entity seeking modification, and the pendency of other litigation brought by the person or entity seeking modification, will factor in the court's determination of the propriety of maintaining the protective order.

### Reliance:

The extent to which the parties have relied upon the protection afforded their disclo-

2. *See Cipollone v. Liggett Group, Inc.*, 822 F.2d 335, 342 (3d Cir.1987), where it was held that the focus of the good-cause provision of Rule 26(c) which allows for protective orders to protect a party or person, should be on the injury to a specific individual or entity as opposed to general concerns of case management. *Cipollone* may be distinguished from the instant case in that it involved a protective order being entered over the objections of the plaintiffs; the dispute therein involved the propriety of entering an unconsented protective order. Were this case to involve the propriety of the magistrate judge having entered a protective order benefitting the defendants over the objections of the plaintiffs, and absent any finding by the magistrate judge or showing of good cause by the defendant for the entry thereof, this Court would be compelled to agree with the reasoning of the *Cipollone* court.

sures made under the consented protective order is an important factor with respect to any proposed modification thereof. In this case, Bankers has relied heavily on the protection of the protective order in making its disclosures to the defendants. Any modification of the terms of that protective order would essentially undermine the reliability of a court order and would impede the parties ability to act in reliance thereupon. As Judge Snyder in the Middle District of Florida stated, the "[f]ailure to protect Defendants' reliance on the Protective Order would not only prejudice the confidentiality interests of Defendants, it would undermine the effectiveness of protective orders in facilitating discovery." *State of Florida v. Jones Chemicals, Inc.*, 148 F.R.D. 282, 288 (M.D.Fla.1993)(internal citations omitted).[3] The documents produced in this matter in reliance on the protective order are allegedly subject to the attorney-client privilege, and that privilege should not be subject to implied waiver simply by virtue of the fact that the disclosing party relied on a court order ensuring confidentiality and non-disclosure to third parties.

**Status of Movant DOI and pendency of other litigation:**

The DOI has issued investigative subpoenas for certain materials from various parties as part of its preliminary investigation of alleged misconduct by Defendant Bankers. The absence of a pending suit against the party opposing modification is also relevant to the determination of modification of the protective order.

Courts have reasoned that the absence of any pending litigation makes it less likely that modification will avoid repetitious or duplicative discovery, and that allowing modification may result in harassment. *See Hayden*, 106 F.R.D. at 555–56. The *Hayden* court was faced with circumstances very similar to those presently at issue before this Court. In that case, the Attorneys General of Texas and New York served the plaintiffs with civil investigative demands (i.e. subpoe-

nas) which demanded production of all documents held by them in connection with their suit against the defendants, for the attorneys general's use in their respective preliminary investigations of those defendants' possible violations of state anti-trust statutes. As in the instate case, the states had yet to commence any action against the defendants. The plaintiffs in that case, not the attorneys general, sought modification of the protective order to allow them to comply with the subpoenas. The *Hayden* court noted that the most important factor militating against modification of the protective order was the fact that no action was pending against the defendants by either New York or Texas, instead the defendants were merely "targets of the two states' preliminary investigations." *Hayden*, 106 F.R.D. at 556 (internal quotations omitted). The preliminary nature of the states' investigations persuaded the court to burden the party seeking modification with showing why the protective order should be modified.

Additionally, the *Hayden* court noted that the government's status as an investigator, rather than as a litigant, weighed heavily in favor of limiting the need for modification, and required the parties seeking modification to demonstrate some adequate grounds for granting their request. While it is true that the government has certain special investigative powers which may enable it to gain access to protected materials where other civil non-parties may be denied access, those circumstances are often limited and require a special showing of compelling need. For example, in *In re Beef Industry Antitrust Litigation*, 457 F.Supp. 210, 211 (N.D.Tex.1978), it was determined that Congress may not subpoena documents or materials received pursuant to a federal protective order, unless it can show "extraordinary circumstances." Allowing a Congressional subcommittee to do so would have "interfer[ed] with the processes of a Federal Court." *Id.* at 212.

Like Defendant Bankers, this Court is mindful of the Eleventh Circuit's holding in *In re Grand Jury Proceedings v. United*

---

**3.** It should be noted that the protective order at issue in the *Jones Chemicals* case contained language similar to that currently being proposed by Movant DOI (i.e. that nothing therein could pro-

hibit a party from disclosing its own documents or information not obtained from an opposing party as a result of discovery under the protective order).

*States,* 995 F.2d 1013 (11th Cir.1993), however, the holding in that case is very limited. There, the Eleventh Circuit held that information obtained under a Rule 26(c) protective order would not be shielded from subsequent federal grand jury investigation by virtue of the protective order. The limited holding of the *In re Grand Jury* case, however, cannot be applied to the dissimilar facts presented here. Indeed, the Eleventh Circuit explicitly stated in that case that "[t]he *sole* issue before us is whether a protective order issued under Rule 26(c) of the Federal Rules of Civil Procedure may shield a deposition given in a civil suit from a subsequent *federal grand jury subpoena.*" *Id.* at 1015 (emphasis supplied). True, the DOI, pursuant to its own investigatory procedures has issued its own investigative subpoenas, however, the DOI is not a federal grand jury, thus *In re Grand Jury* is irrelevant to the matter before this Court.

■ Upon careful examination of the current protective order's language, the Court concludes that as it currently reads, the protective order already permits disclosure of materials which were in a party's possession prior to the commencement of the instant litigation, or which came into that party's possession specifically as a result of disclosure made pursuant to the protective order.

Based upon the foregoing, this Court concludes that to the extent that the DOI's request for modification seeks to allow it access to the protected materials obtained by one of the parties solely by virtue of disclosure pursuant to the protective order, the request should be and the same shall be denied. To the extent that the DOI's request seeks clarification to include language which asserts that the protective order cannot be used by any party to preclude it from disclosing protected materials which came into the party's possession either prior to the commencement of this current litigation or by some means other than disclosure under the protective order, and to the extent that the current protective order can be read so as to provide otherwise, the request shall be granted and the protective order (doc. 203) shall be so modified for the purpose of clarification to include the proposed language provided by the DOI in Document No. 320. The Court notes that the inclusion of this proposed language only clarifies the current status of the protective order as interpreted by the Court, that the magistrate judge did not commit clear error and that he properly entered the protective order, and that the inclusion of the clarification language does not substantively modify the terms thereof.

**B. Movant Times Publishing Company's and Lucy Morgan's motion to quash subpoena for deposition and for protective order (doc. 277):**

Times Publishing Company ("Times") and Lucy Morgan ("Morgan") have moved for an order quashing the subpoena for deposition upon written questions of Ms. Morgan and for a protective order based upon the privilege afforded the Times and Ms. Morgan under the First Amendment of the United States Constitution. Movants supplemented their motion to include the cross-deposition questions propounded by Defendants Meehan and Delano. Ms. Morgan is employed as a reporter and chief of the Times' Tallahassee news bureau; she interviewed individuals, obtained documents, and wrote news stories concerning the controversy between the DOI, Plaintiff Kevin McCarty, and Defendant Bankers Insurance; the results of her efforts were published in a news story which ran in the June 18, 1996 issue of *The St. Petersburg Times.*

Movants have argued that this Court should apply the federal common law regarding privileges in this matter since the central claim is based on a federal question, i.e. the alleged violation of 18 U.S.C. § 2520. Indeed, the federal courts, including the Eleventh Circuit, and the district courts therein have overwhelmingly recognized a qualified privilege for journalists which allows them to resist compelled disclosure of their professional news gathering efforts and results, whether published or not. With regard to the state law claims asserted herein, Times and Morgan argue that the law of Florida is "in disarray" with respect to the validity of a journalist's privilege and is thus in conflict with the applicable federal privilege standard. Plaintiff McCarty, on the other hand,

argues vociferously that this Court should adopt the state law standard regarding the journalist privilege which requires that the journalist bear the burden of proof of the existence of said privilege. McCarty further contends that Rule 501 of the Federal Rules of Evidence, governing privileges, is unclear which law the court should apply when the federal and state rules are in conflict. However, Plaintiff further asserts that because the state law in effect at the time he filed his brief required the presence of a threshold determination of materiality, it differed from, and was not in conflict with federal law. McCarty thus contends that no conflict exists in this matter, and that this Court should apply the state law standard to the pendant state claims "for which this discovery is needed."

█ It now appears that any conflict between the laws of Florida and federal common law with respect to the claim of a journalist's privilege has been recently resolved by the Florida legislature. At the time that this motion was filed, the state of the law regarding a journalist's privilege in Florida was unclear. *See Kidwell v. McCutcheon,* 962 F.Supp. 1477, 1479 (S.D.Fla.1996). Within the past month, the Florida legislature passed and submitted to Governor Chiles, Senate Bill 150, to create a statutory journalist's privilege that enables professional journalists to refuse to be a witness or disclose specified information. The bill, which created Section 90.5015, Florida Statutes, was signed by the Governor on May 12, 1998 and establishes a three-part test, similar to that of the federal common law,[4] requiring a party seeking to overcome the privilege to make a clear and specific showing of each of the three elements. Section 90.5015 provides as follows, with the applicable test for overcoming the privilege emphasized in italics:

90.5015 Journalist's privilege.—

(1) For purposes of this section, the term:

(a) "Professional journalist" means a person regularly engaged in collecting, photographing, recording, writing, editing, reporting, or publishing news, for gain or livelihood, who obtained the information sought while working as a salaried employee of, or independent contractor for, a newspaper, news journal, news agency, press association, wire service, radio or television station, network, or news magazine. Book authors and other who are not professional journalists, as defined in this paragraph, are not included in the provisions of this section.

(b) "News" means information of public concern relating to local, statewide, national, or worldwide issues or events.

(2) A professional journalist has a qualified privilege not to be a witness concerning, and not to disclose the information, including the identity of any source, that the professional journalist has obtained while actively gathering news. This privilege applies only to information or eyewitness observations obtained within the normal scope of employment and does not apply to physical evidence, eyewitness observations, or visual or audio recording of crimes. *A party seeking to overcome this privilege must make a clear and specific showing that:*

*(a) The information is relevant and material to unresolved issues that have been raised in the proceeding for which the information is sought;*

*(b) The information cannot be obtained from alternative sources; and*

*(c) A compelling interest exists for requiring disclosure of the information.*

(3) A court shall order disclosure pursuant to subsection (2) only of that portion of the information for which the showing under subsection (2) has been made and shall support such order with clear and specific findings made after a hearing.

(4) A professional journalist does not waive the privilege by publishing or broadcasting information.

---

**4.** *See United States v. Caporale,* 806 F.2d 1487 (11th Cir.1986). The *Caporale* court set forth the federal test as requiring a showing that the information (1) is highly relevant (§ 90.5015 prong one); (2) is necessary to the proper presentation of the case (§ 90.5015 prong three); and (3) is unavailable from other sources (§ 90.5015 prong two).

(5) This section must not be construed to limit any privilege or right provided to a professional journalist under law.

(6) Authentication: Photographs, diagrams, video recordings, audio recordings, computer records, or other business records maintained, disclosed, provided, or produced by a professional journalist, or by the employer or principal of a professional journalist, may be authenticated for admission into evidence upon a showing, by affidavit of the professional journalist, or other individual with personal knowledge, that the photograph, diagram, video recording, audio recording, computer record, or other business record is a true and accurate copy of the original, and that the copy truly and accurately reflects the observations and facts contained therein.

(7) If the affidavit of authenticity and accuracy, or other relevant factual circumstance, causes the court to have clear and convincing doubts as to the authenticity or accuracy of the proffered evidence, the court may decline to admit such evidence.

(8) If any provision of this section or its application to any particular person or circumstance is held invalid, that provision or its application is severable and does not affect the validity of other provisions or applications of this section.

Section 2. This act shall take effect upon becoming law.

Senate Bill 150, *to be codified at* Section 90.5015, Florida Statutes (1998)(emphasis supplied).

Based upon the recent change in Florida law as it relates to the journalist's privilege, the Court has determined that application of either the federal common law standard or the newly announced Florida standard will yield the same result, as the factors of each are virtually indistinguishable. In either case the burden rests with Plaintiff McCarty (the party seeking to overcome the qualified privilege) to establish each of the three factors by clear and convincing evidence. While this Court is aware that Plaintiff responded to the movants' motion assuming the posture that the movants were to shoulder the burden of establishing the privilege, he did argue in the alternative that should the Court

adopt the federal standard, which by this Order it has, he could overcome the privilege. Accordingly, the Court shall determine the privilege issue based upon the pleadings presently before it. Each of the three relevant factors will be discussed below.

### Relevancy of disclosure sought

In order to overcome the journalist's privilege, McCarty must first establish that the information which he seeks is "relevant and material to unresolved issues that have been raised in the proceeding for which the information is sought." Fla. Stat. § 90.5015(2)(a). McCarty asserts that the information sought goes directly to the "heart of" his claims of defamation and intentional interference with McCarty's employment relationship with the DOI. McCarty claims that this information is relevant to impeach the deposition testimony of Defendants Meehan and Delano, who testified therein, that they did not make the purported statements and who according to McCarty have claimed that Ms. Morgan put their statements in her own words.

Movants contend that McCarty cannot show the requisite degree of relevance necessary to overcome the journalist's privilege. They contend that Ms. Morgan's article merely summarizes comments made by Defendants Meehan and Delano and that any relevance could only be tenuously related to confirmation of those remarks.

### Attainability from alternate sources

McCarty claims that the most obvious alternative sources, Meehan and Delano themselves, have denied that the statements reported by Morgan were ever made. Furthermore, McCarty notes that the press releases issued by Meehan and Delano are not an appropriate alternative source where the defendants have denied the statements made to Morgan and have not denied the statements made in their press releases. According to McCarty, there is no other reasonable or competent alternative source for the statements reported by Morgan and denied by Meehan and Delano.

Movants argue that in order to overcome the privilege, McCarty must show that he has exhausted *all* alternatives to compelling

the testimony of Morgan. According to Movants, McCarty can make use of the Bankers press release to verify that it in fact launched an investigation to determine if McCarty had engaged in a pattern of illegal activities to unfairly target Bankers. Of particular relevance is the fact that McCarty must show that the information sought from Morgan is not attainable from any other source whatsoever, not simply Ms. Morgan's recollection of the content of the interview. According to Movants, that information is readily attainable from the Bankers June 21, 1996 press release.

Alternatively, Movants argue that McCarty is not entitled to Morgan's testimony for the purpose of impeaching Meehan and Delano should they appear at trial, until they actually do so, especially given the constitutional implications of the subpoena.

**Compelling interest for requiring disclosure**

McCarty asserts that a compelling need for this testimony exists since Ms. Morgan is the only other eyewitness to the statements made by Defendants Meehan and Delano, who have each now denied making the statements which she has summarily attributed to them. Movants on the other hand, argue that McCarty cannot meet the "compelling need" requirement since he has failed to show that he would be unable to succeed on his claims without Ms. Morgan's testimony. No testimony from Ms. Morgan could establish what the intent of the Bankers defendants was in hiring the private investigator since her knowledge would not be first-hand, and is based only upon an interview conducted with Bankers executives approximately one year following the alleged events. Movants also point to the fact that Bankers itself issued numerous press releases concerning its activities; one of those press releases even went so far as to characterize McCarty's actions as allegedly "illegal."

Considering all of these factors together, this Court must agree with Movants Times and Morgan. McCarty has failed to overcome the heavy burden of showing by clear and convincing evidence that he has been unable to identify and obtain the information which it seeks from Ms. Morgan from the other sources (i.e. the press releases to show Bankers' public statements about him and his alleged illegal behavior, or the self-authenticating article itself to establish the discrepancies in Meehan and Delano's testimony), nor has he shown that his need for her testimony is so compelling that he cannot otherwise establish his entitlement to relief on his asserted claims. Despite his having shown that the sought information would be relevant to his claims of defamation and tortious interference of his employment relationship with the DOI, the relevancy is outweighed by the other factors and the compelling need to uphold the journalist's privilege which is so broadly recognized in the federal common law and the now applicable Florida statutory provisions of Section 90.5015.

**C. Defendant Bankers, Meehan, and Delano's motion for summary judgment (doc. 311) and their motion for Court to take judicial notice (doc. 291); Defendant Blanton's motion for summary judgment (doc. 288) and motion for sanctions (308):**

Pursuant to this Court's order dated January 6, 1998 (doc. 353), each of these four motions was held in abeyance pending the Court's resolution of the propriety of the protective order. Having resolved the propriety of the protective order, and pursuant to paragraph two of this Court's prior Order, Plaintiff McCarty shall file his responses thereto within fifteen (15) days of the date on which the Clerk enters this order on the docket for this case.

Based upon the foregoing considerations, it is hereby,

**ORDERED AND ADJUDGED:**

1. The Florida Department of Insurance's motion for clarification and/or modification (doc. 225) is GRANTED and the previously entered protective order (doc. 203) is modified to include the language proposed by the DOI in Document No. 320, however it is so modified for the sole purpose of clarifying the order to the extent that it could have been interpreted so as not to provide that any party thereto could

not be prevented from disclosing any information or materials which any party thereto had in its possession prior to the inception of the instant case or which any party came into possession of solely by virtue of disclosure made by another party pursuant to the protective order. The DOI shall not be entitled to discover from any party, any of the defined protected materials which came into that party's possession solely by virtue of disclosure and production by another party made pursuant to the protective order.

2. The Times' and Morgan's motion to quash the subpoena for deposition and for a protective order (doc. 277) is GRANTED. The subpoena for deposition upon written questions issued to Ms. Morgan by Plaintiff McCarty is hereby QUASHED, and she is excused from answering either the questions contained therein or within the Defendants Meehan and Delano's cross-deposition questions which were propounded on or about October 10, 1997. Absent prior approval of this Court and a proper showing entitling a party to waiver of the journalist's privilege, no further discovery shall be had of Ms. Morgan with respect to her interviews with Bankers officials or with respect to her news gathering efforts, including any written reports published in any Times publication related to the McCarty/Bankers matter.

3. Plaintiff shall file his response to the following motions within fifteen days of the date the Clerk enters this Order upon the docket of this case: Defendants Bankers, Meehan, and Delano's motion for summary judgement (doc. 311) and their motion for judicial notice (doc. 291); Defendant Blanton's motion for summary judgment (doc. 288); and Defendant Blanton's motion for sanctions (doc. 308).

4. As an administrative matter, and based upon this Court's resolution of the scope of the protective order, Plaintiff's motion to seal "Plaintiff's Supplemental Rule 26(a)(1) Disclo-

sures" served on August 14, 1997 (doc. 237) and Plaintiff's motion to seal his response to Defendants' motion to compel (doc. 343) are GRANTED, and the Clerk is directed to seal the same.

5. The parties' joint motion to set dates for pre-trial conference, and trial, and to reset deadlines accordingly (doc. 257) shall be held abeyance and the parties are hereby directed to file with the Court, within fifteen days of the date the Clerk enters this Order upon the docket of this case, a joint report which includes a proposed schedule for the pre-trial conference, trial, and all related deadlines, conferences, and other pre-trial filings.